NOT FOR PUBLICATION (Document No. 1)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
AKRAM N. MUHAMMAD,                  :
                                    :
            Petitioner,             :    Civil No. 08-0061 (RBK)
                                    :
      v.                            :    **OPINION**
                                    :
UNITED STATES OF AMERICA,           :
                                    :
            Respondent.             :
_____ :

**KUGLER**, United States District Judge:

This matter comes before the Court on Petitioner Akram N. Muhammad's Petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1). Petitioner argues that he was denied effective assistance of counsel. For the reasons discussed below, the Petition is denied.

**I.      BACKGROUND**

On February 27, 2006, Camden Police Department officers attempted to stop a vehicle that Petitioner Muhammad was recklessly driving. After crashing his vehicle, Muhammad tried to flee from the police. During the ensuing foot pursuit, Camden Police officers observed Muhammad discard a firearm and forty seven baggies of crack cocaine. Muhammad was arrested and taken into custody after he climbed a chain link fence and fell onto the hood of a police vehicle.

1

Muhammad was indicted by a Federal Grand Jury on May 24, 2006 for being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Assistant Federal Defender Lori Koch represented Muhammad in this matter. Pursuant to a plea agreement with the U.S. Attorney for the District of New Jersey, Muhammad pled guilty to the sole count of the indictment on September 26, 2006. The plea agreement stipulated seven facts that the parties agreed to:

    i.      Prior to February 27, 2006, Akram N. Muhammad sustained at least two felony convictions of either a crime of violence of a controlled substance.

    ii.     On February 27, 2006, Akram N. Muhammad possessed a loaded Heckler & Koch, Model VP70Z, 9 millimeter pistol, bearing serial number 87470.

    iii.    The Heckler & Koch, Model VP70Z, 9 millimeter pistol, bearing serial number 87470 moved in and affected interstate commerce.

    iv.    Akram N. Muhammad used or possessed the Heckler & Koch, Model VP70Z, 9 millimeter pistol, bearing serial number 87470 in connection with another felony offense, namely possession with intent to distribute crack cocaine.

    v.     Akram N. Muhammad recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer on February 27, 2006.

    vi.    As of the date of this letter, Akram N. Muhammad has clearly demonstrated a recognition and affirmative acceptance of responsibility for the offense charged.

    vii.   As of the date of this letter, Akram N. Muhammad has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government and the court to allocate their resources efficiently.

Plea Agreement at 6.

Pursuant to U.S.S.G. § 2K2.1(b)(6) and § 3C1.2, the Plea Agreement (specifically facts

(iv) and (v)) created a 6 point enhancement to Muhammad's offense level.[1]  The parties agreed that Muhammad had a total offense level of 27 and a criminal history category of VI for which the Sentencing Guidelines advised a range of 130-162 months.  However, the statutory maximum term of imprisonment for a violation of 18 U.S.C. § 922(g) is only 120 months, therefore the guideline range became 120 months.  The Plea Agreement also explicitly stated that Petitioner "waived certain rights to file an appeal, collateral attack, writ or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255."  Plea Agreement at 3.

On January 5, 2007, this Court sentenced Muhammad to 108 months imprisonment, a three-year supervised release term, and $100 special assessment.  Thereafter, Muhammad did not pursue a direct appeal.

On January 2, 2008, Muhammad filed a pro se petition claiming ineffective assistance of counsel pursuant to 28 U.S.C. § 2255.  The Government filed its Brief in Opposition on April 10, 2008.  Petitioner Muhammad's Reply to the Government's Brief in Opposition was entered on May 28, 2008.  All parties having briefed the matter, the Petition is ripe for review.

**II.   STANDARD**

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move before the court that imposed the sentence to vacate, set aside, or correct the sentence if it were imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum

---

[1] In 2007, U.S.S.G. § 2K2.1(b)(5) was re-numbered as U.S.S.G. § 2K2.1(b)(6), which is the same four point enhancement.

authorized by law, or is otherwise subject to collateral attack[.]" To establish a right to a habeas corpus relief, a petitioner must demonstrate "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." U.S. v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989). Section 2255 is the preferred method for advancing an ineffective assistance of counsel claim. U.S. v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994). A petitioner is entitled to a hearing to determine issues of fact and to make conclusions of law, unless the files and records of the case "conclusively show" that the petitioner is entitled to no relief. § 2255(b).

### III. DISCUSSION

Petitioner claims, as indicated above, that habeas relief is warranted because his attorney provided ineffective assistance of counsel. The Court will consider each of Petitioner's individual claims as to his counsel's effectiveness, but first the Court must consider whether Petitioner may bring the instant § 2255 petition, given that he waived his right to do so in his Plea Agreement. The Court finds that Petitioner cannot.

#### A. Enforceability of Waiver

Waivers of the right to appeal that are contained in a guilty plea agreement are generally permissible if entered into knowingly and voluntarily, unless they work a miscarriage of justice. U.S. v. Khattak, 273 F.3d 557, 562 (3d Cir. 2001). In determining when the enforcement of a waiver of the right to appeal would result in a miscarriage of justice, the Third Circuit declined to adopt a "blanket rule prohibiting all review of certain otherwise valid waivers of appeal" and further refused to "earmark specific situations" that would warrant invalidating such a waiver. Id. at 562-63. Instead it instructed that several factors can be used as a guideline in analysis of

4

what constitutes a miscarriage of justice, such as: "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the government, and the extent to which the defendant acquiesced in the result.'" Id. at 563 (quoting U.S. v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)). The Third Circuit cautioned, however, that it would be an "unusual circumstance" where an "error amounting to a miscarriage of justice may invalidate the waiver." Id. at 562.

Several district courts within this circuit have held that a waiver of a right to collaterally attack a sentence by filing a motion pursuant to 28 U.S.C.§ 2255 is valid and enforceable under the Khattak standard. See Simon v. U.S., No. Civ. 05-5503, 2006 WL 3534600, at *5 (D.N.J. Dec. 7, 2006) (holding that the standard set forth by the Third Circuit in Khattak is equally applicable to waivers of the right to collaterally attack a sentence pursuant to § 2255); Darr v. U.S., No. 06-608, 2006 WL 2645119, at *2 (D.N.J. Sept. 14, 2006) (holding that while the Third Circuit has not ruled on the enforceability of waivers and collateral attacks, the logic of Khattak is as applicable here as it is to appeals); U.S. v. Dancy, Nos. 3:CR-03-340, 3:CV-06-070, 2006 WL 2504028, at *2 (M.D.Pa. Aug. 28, 2006) (holding that petitioner's waiver of his right to bring a § 2255 petition was valid under Khattak standard and dismissing § 2255 petition on such grounds).

The Court finds that the standard set forth by the Third Circuit in Khattak applies to waivers of the right to collaterally attack a sentence pursuant to § 2255. To hold otherwise would render such a waiver agreement essentially meaningless and would result in a mockery of the judicial system by affording criminal defendants the benefits of plea agreements, while shielding them from their own promises made under such agreements. See Khattak, 273 F.3d at

5

561 (stating that waivers preserve the finality of judgments and sentences imposed pursuant to valid pleas of guilty); Dancy, 2006 WL 2504028, at *3 (stating that to excuse a defendant's waiver would make a mockery of Fed.R.Crim.P. 11 and the judicial system).

      Here, Petitioner knowingly and voluntarily waived his right to a § 2255 petition pursuant to the waiver stipulated to in the Plea Agreement and at his plea hearing. Specifically, the Plea Agreement states that Petitioner "waived certain rights to file an appeal, collateral attack, writ or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255." Plea Agreement at 3. This Court also engaged in a detailed colloquy with Petitioner about the Plea Agreement at the plea hearing. This Court stated to Petitioner that "both you and the Government give up your right to file an appeal, a collateral attack, a writ or other motion" and Petitioner responded that he understood this stipulation to a waiver of rights. Plea Tr. at 13-14: 22-25, 1. Petitioner also told the Court that no promises had been made to him about what his sentence was going to be. Plea Tr. at 8: 17-22 . Petitioner further denied that anybody forced or threatened him to plead guilty. Plea Tr. at 9: 11-13.

      Accordingly, the record reflects that Petitioner entered into this agreement both knowingly and voluntarily, creating an enforceable waiver of limited rights. See Khattak, 273 F.3d at 563 (holding that a waiver of the right to appeal is knowing and voluntary where the sentencing judge inquired as to whether the defendant received a sentence within the terms of his plea agreement); Colon v. U.S., No. 05-CR-123-2, 2009 WL 37487, at *2 (E.D. Pa. 2009) (holding that defendant's waiver of his right to appeal or collaterally attack his conviction or sentence is enforceable because there was no support in the record that he acted unknowingly or involuntarily); Dancy, 2006 WL 2504028, at *3 (holding that waiver of right to file a § 2255

6

petition is enforceable where the petitioner indicated that he understood the waiver at his plea colloquy); Prado v. U.S., Nos. CR-01-373-7, CV-05-0938, 2005 WL 1522201, at *2 (D.N.J. June 27, 2005) (enforcing a waiver of right to bring § 2255 petition where petitioner signed plea agreement including the waiver and stated that he understood the waiver at his plea colloquy).

It is possible for there to be a miscarriage of justice when plea proceedings were tainted by ineffective assistance of counsel. U.S. v. Teeter, 257 F.3d 14, 25 (1st Cir. 2001). However, this Court finds that the circumstances surrounding Petitioner's claims were not so unusual that the enforcement of the express waiver of his rights would result in a miscarriage of justice. Petitioner, in essence, argues that his counsel was ineffective for failing to file a notice of appeal post-sentencing. Several courts have adopted the Teeter rational, holding that claims of ineffective assistance of counsel at sentencing, as opposed to claims that the waiver or plea itself was tainted by ineffective counsel, do not excuse knowing and voluntary waivers of post-conviction rights. See, e.g., U.S. v. White, 307 F.3d 336, 343 (5th Cir. 2002) ("[A]n ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directed affected the validity of that waiver or the plea itself."); Mason v. U.S., 211 F.3d 1065, 1069 (7th Cir. 2000) (holding that the defendant waived his right to bring a § 2255 petition where he argued ineffective assistance of counsel at sentencing as opposed to counsel's deficient performance in negotiating the waiver); U.S. v. Robinson, Nos. CV-04-884, CR-02-760, 2004 WL 1169112, at *3-4 (E.D. Pa. Apr. 30, 2004) (refusing to excuse defendant's waiver of his right to bring § petition where defendant's claims of ineffective assistance of counsel were based on counsel's performance at sentencing as opposed to ineffectiveness in entering into plea agreement). Similarly, in the present matter, Petitioner's claim that his counsel was ineffective

7

based on instances occurring outside the plea hearing, for the same reasons, does not excuse the waiver.

Petitioner has failed to demonstrate that he did not understand the Plea Agreement or that he received ineffective assistance of counsel, as will be further discussed below. Petitioner entered into the waiver both knowingly and voluntarily and the enforcement of such would not result in a miscarriage of justice. Nonetheless, the Court will still look to each of Petitioner's individual claims.

### B.   Ineffective Assistance of Counsel

Petitioner Muhammad states three grounds for why his counsel's assistance was ineffective under Strickland v. Washington, 466 U.S. 668 (1994). Petitioner alleges that trial counsel provided constitutionally ineffective assistance for: (1) failing to file a notice of appeal; (2) for not being familiar with the Sentencing Guidelines and amendments; and (3) for failing to investigate the prosecution's evidence prior to advising Petitioner to accept the Plea Agreement. The Government challenges each of these allegations, arguing that Petitioner received constitutionally effective assistance and was not prejudiced by accepting the plea agreement. Petitioner's position is untenable and the petition is denied.

To prevail on a claim of ineffective assistance of counsel, a party must establish (1) deficiency of counsel's performance and (2) prejudice caused by the deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). Only the most serious errors constitute deficient performance. Id. (describing errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"). Prejudice exists only when the defendant is denied a fair trial capable of producing a reliable result. Id.

The first Strickland prong is an objective standard of "reasonableness under prevailing professional norms." Id. at 688. The Constitution requires a fair trial, not some higher quality of legal representation. See Id. at 688-89. Thus, the standard is "highly deferential" and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

The second Strickland prong is a subjective, totality-of-the-circumstances analysis of whether counsel's conduct "actually had an adverse effect of the defense." Id. at 693. A speculative or hypothetical effect is not enough. Id. There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### 1. Failure to File an Appeal

Turning to the merits of Petitioner's challenge, he first argues that his counsel provided constitutionally ineffective assistance when she failed to file a notice of appeal after sentencing. Pet. br. at 3. Petitioner asserts that counsel failed to consult with him about the "advantages and disadvantages of taking an appeal" and failed to make "a reasonable effort to discover the defendant's wishes." Pet. br. at 6. Petitioner argues that there is a reasonable probability that but for counsel's deficient performance, Petitioner would have filed an appeal. Pet. br. at 7. Petitioner further alleges that the 6 point enhancement was erroneously applied to him and that his offense level should have been 21 instead of 27, with a guideline range of 77-96 months. Pet. br. at 12. The Government contends that the facts of this case demonstrate that there are no non-frivolous issues and that no rational defendant would file an appeal under these circumstances.

The Court finds Petitioner's position untenable.

The two-prong <u>Strickland</u> standard can be applied to a claim that counsel was constitutionally ineffective for failing to file a notice of appeal.  See <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 480-82 (2000) (under a slightly modified version of the test for ineffective counsel, a petitioner must show (1) deficient performance and (2) a reasonable probability that but for the counsel's deficient failure to consult with him about an appeal, he would have timely appealed). The initial question before the Court is whether counsel's failure to consult with defendant about a possible appeal is itself unconstitutionally deficient.  Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rationale defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant demonstrated to counsel that he was interested in appealing.  <u>Id.</u> at 480.

The Court is hard-pressed to believe that Petitioner received deficient performance from his defense counsel.  It is well-settled law that an attorney who disregards a client's request to file an appeal acts unreasonable and deficient.  <u>Id.</u> at 477.  However, that is not the situation here.  In his brief in support of the Petition, Petitioner does not claim that he advised counsel to file an appeal after the guilty plea was entered.  Petitioner even stated in his brief that, "I *assumed* trial counsel would file a notice of appeal." Pet. br. at 6 (emphasis added).  In other words, he admits that he never expressed to counsel that he wanted an appeal, thus to successfully attack his attorney's performance, he must show that a reasonable defendant would want to appeal under these circumstances.

Yet, Petitioner has not done so because he has not sufficiently demonstrated the presence

of non-frivolous issues for appeal. To determine if a rational defendant would appeal, a Court must take into account all the information that counsel knew or should have known. See Roe, 528 U.S. at 480 (holding that although not determinative, a relevant factor in this inquiry is whether the conviction follows a trial or a guilty plea because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that defendant wants an end to judicial proceedings). Petitioner argues that the sentencing enhancements agreed to in the Plea Agreement should not have applied to him. Petitioner claims that he only agreed to the four point enhancement of fact (iv) in the Plea Agreement because he assumed that the discarded firearm and the 47 baggies of crack cocaine qualified as "using or possessing a pistol in connection with another felony offense" under § 2K2.1(b)(6). Pet. reply br. at 2. However, Petitioner is mistaken in arguing that the facts of this case do not support a four point enhancement. At the plea hearing, Petitioner stated that the possession of the firearm was not an accident. Plea Tr. at 16: 16-18. See Smith v. U.S., 508 U.S. 223, 238 (1993) (holding that the presence or involvement of a firearm cannot be the result of accident or coincidence). Here, the four point enhancement was correctly applied because the Petitioner's possession of the gun had the potential to facilitate the other offense: possession with intent to distribute crack cocaine. See U.S. v. Loney, 219 F.3d 281, 287 (3d Cir. 2000) (holding that the enhancement should apply when possession of the firearm facilitates, or has the potential of facilitating, the other offense).

      Petitioner further claims that the two point enhancement stipulated to in fact (v) of the Plea Agreement was only agreed to because his counsel never advised him that the government needed to show "substantial" risk rather than just a "potential" risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer under § 3C1.2.

Pet. reply br. at 2.  Not explaining the difference between substantial and potential does not amount to ineffective counsel.  Cf. U.S. v. Lilly, 536 F.3d 190 (3d Cir. 2008) (holding that defense counsel's failure in not explaining to defendant what waiving a jury trial meant did not prejudice the defendant, and thus could not amount to ineffective assistance).  Nowhere in the Plea Agreement does it state that only a "potential" risk is needed under § 3C1.2.  The Plea Agreement clearly states that a "substantial risk" is needed, and Petitioner agreed to and understood this requirement.  Plea Tr. at 13: 1-11.  In response to this Court's questioning, Petitioner also stated that he spoke with his lawyer before signing the Plea Agreement and that counsel answered all questions that he had.  Plea Tr. at 9: 7-13.

In cases where the defendant pled guilty, "courts 'must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.'"  Serrano v. U.S., No. 04-4289, 2005 WL 2129922, at *5 (D.N.J Aug. 31, 2005) (quoting Roe, 528 U.S. at 480).  Here, Petitioner received the benefit of his bargained-for plea agreement.  The Sentencing Guidelines were not incorrectly applied and it was made clear to Petitioner that he faced up to 120 months or ten years imprisonment.  Plea Tr. at 7: 4-9.  This Court reviewed each individual stipulation with Petitioner who acknowledged that he understood and accepted responsibility for the offense.  Plea Tr. at 12-13: 4-25, 1-11.  Counsel would have no reason to think that a rational defendant would file a post-sentencing appeal arguing that the enhancements should not have applied to him after he clearly agreed to the stipulations in the plea agreement.

Petitioner also fails the second prong of the Roe test because he has not shown the requisite prejudice needed to succeed on a claim of ineffective assistance of counsel.  Directly

12

before Petitioner pled guilty to the offense, Petitioner even stated to the Court that he discussed his rights to file an appeal with counsel. Plea Tr. at 17: 13-15. However, Petitioner let a year pass before submitting the habeas petition, during which time he made no other inquiries about appealing. Petitioner has not shown that there was a reasonable probability that but for counsel's alleged failure to consult with him, he would have timely appealed**.**

### 2. Failure to Understand the Sentencing Guidelines

Petitioner next asserts that he received ineffective assistance of counsel because counsel was not familiar with the Sentencing Guidelines, which prevented him from entering a knowing and intelligent plea. Pet. br. at 12. The Government argues that Petitioner made the decision to plead guilty both knowingly and voluntarily. Resp. br. at 11. The Court agrees with the Government's position.

Petitioner is entitled to "effective" assistance of counsel, not the best assistance or even mistake-free assistance. See U.S. v. Gonzalez-Lopez, 548 U.S. 140, 147 (2006). Misinformation from the defendant's attorney before the entry of a guilty plea standing alone, does not constitute ineffective assistance of counsel. See U.S. v. Barker, 7 F.3d 629, 633 (7th Cir. 1993). In order to show prejudice, a petitioner alleging that he pled guilty based on misinformation from his attorney must prove that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Here, with no further support, Petitioner merely alleges that he was prevented from entering a knowing and voluntary plea because counsel failed to understand the Sentencing Guidelines. However, even if Petitioner relied on counsel's misinformation in accepting the

13

guilty plea, the Court cured any possible confusion at the plea hearing. Petitioner stated to the Court that he spoke with his lawyer about the Sentencing Guidelines and that he understood the calculation of his offense level. Plea Tr. at 10-11: 17-25, 1-20. Petitioner knew that he faced a maximum of 120 months imprisonment and stated that he wanted a lower sentence, but knew "he would have no choice but to do it" if he was sentenced to 120 months. Sentencing Tr. at 15: 10-11. Thus the record reflects that Petitioner knew and understood the consequences of his guilty plea. Petitioner has not shown that but for counsel's misinformation about the Sentencing Guidelines he would not have pled guilty.

### 3. Failure to Investigate Prosecution's Evidence Before Accepting Plea Offer

Petitioner lastly asserts that he received ineffective assistance of counsel because his counsel failed to investigate the prosecution's evidence prior to advising him to accept the plea agreement. Pet. br. at 12. Again, the Government points out that Petitioner made the decision to plead guilty both knowingly and voluntarily. Resp. br. at 12. The Court concurs.

"[A]n attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation." U.S. v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997); see also Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006). When assessing an ineffectiveness claim based on failure to investigate, a court must assess the decision not to investigate for "reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 691-92. Even if counsel was deficient in the decisions not to investigate, a petitioner must also show prejudice from the failure. See

14

Kauffman, 109 F.3d at 190-91.

Here, Petitioner again simply alleges that his counsel did not investigate the evidence and offers no support for this claim. The Court advised Petitioner that by entering the Plea Agreement he gave up his right to trial. Plea Tr. at 16: 3-6. Petitioner agreed to the stipulated facts and understood that he gave up several rights, including the right for his lawyer to cross examine the Government's witnesses and the right to call his own witnesses to testify on his behalf. Plea Tr. at 15: 11-21. Even if counsel was deficient in her failure to investigate, Petitioner has not shown that he was prejudiced by his plea of guilty. See Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (holding that the prejudice that must be shown is that but for counsel's failure to investigate, defendant would not have entered a guilty plea and proceeded to trial). Thus, Petitioner has not shown that his counsel made an objectively unreasonable decision and thus was ineffective.

### C. Certificate of Appealability

Finally, the Court must assess whether a certificate of appealability should issue. A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). The Local Appellate Rules for the Third Circuit state:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue. . . . If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

L. App. R. 22.2.

A certificate of appealability shall not issue unless there is a "substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing requiring to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Petitioner Muhammad's claims here are based on a purported denial of his Sixth Amendment right to effective counsel. Based on the analysis above, the Court finds that Petitioner's claims are without merit. Reasonable jurists would agree that in each of Petitioner's claims of error, he either did not show that this counsel's actions were unreasonable or he did not show that he suffered any prejudice. Therefore, the Court shall not issue a certificate of appealability.

## IV.   CONCLUSION

For the foregoing reasons, the Petition to vacate, set aside, or correct the sentence is **DENIED**. The Court **SHALL NOT ISSUE** a certificate of appealability. An appropriate Order shall follow.

Date:   7-13-10                                             /s/ Robert B. Kugler
                                                                  ROBERT B. KUGLER
                                                                  United States District Judge